IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

BUWLUS A. MUHAMMAD )
a/k/a PAUL COOPER, )
         Petitioner, ) Civil Action No. 07-22 Erie
)
   v. )
) **District Judge McLaughlin**
VENCENT KANNRINE, et al., ) **Chief Magistrate Judge Baxter**
         Respondents. )

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

**I.   RECOMMENDATION**

     It is respectfully recommended that the Petition for Writ of Habeas Corpus be denied and that a certificate of appealability be denied.

**II.   REPORT**

     Petitioner, Buwlus A. Muhammad, a/k/a Paul Cooper, is a state prisoner currently incarcerated at the State Correctional Institution at Cresson, Pennsylvania ("SCI Cresson"). He has filed a habeas petition [Document # 5], in which he challenges the constitutionality of his state conviction of Terroristic Threats, 18 Pa.C.S. § 2706.[1] Respondents have filed their Answer [Document # 28], and they have submitted parts of the state court record ("SCR") in hard copy format. The documents contained in the SCR are numbered 1 through 56.[2]

---

[1] At the time Petitioner commenced this habeas proceeding, he was incarcerated at the Erie County Prison pursuant to a federal writ of habeas corpus *ad prosequendum* and he was awaiting a federal trial. In addition to challenging his state judgment of sentence, he also challenged his confinement in the Erie County Prison and sought an order from this Court directing the U.S. Marshals Service to return him to state custody. (See Docket # 1). On August 8, 2008, this Court dismissed as moot those habeas claims challenging Petitioner's confinement in the Erie County Prison because federal authorities had returned Petitioner to state custody in satisfaction of the writ of habeas corpus *ad prosequendum* and the state had re-incarcerated him at the State Correctional Institution at Smithfield. (Docket # 42).

[2] The Court notes that Respondents' Answer did not provide an accurate or up-to-date summarization of the relevant state court proceedings. Respondents also failed to accurately set forth the claims that Petitioner had raised in his first (and only timely) motion for collateral relief under Pennsylvania's Post Conviction Relief Act ("PCRA"), 42 Pa.C.S.

1

## A. Relevant Factual and Procedural Background

On December 18, 2003, a criminal complaint was filed against Petitioner charging him with one count of making terroristic threats. In relevant part, the Pennsylvania Crimes Code defines this crime as follows:

> **(a) Offense defined. –** A person commits the crime of terroristic threats if the person communicates, either directly or indirectly, a threat to:
>
> > (1) commit any crime of violence with intent to terrorize another;
>
> > \*    \*    \*
>
> > (3) otherwise cause serious public inconvenience, or cause terror or serious public inconvenience with reckless disregard of the risk of causing such terror or inconvenience.

18 Pa.C.S. § 2706(a)(1), (3).

Stephen J. Lagner, III, Esquire, was appointed to represent Petitioner. A jury trial was conducted before the Honorable Shad Connelly of the Court of Common Pleas of Erie County on October 13 and 14, 2004. The Superior Court of Pennsylvania summarized the evidence presented at Petitioner's trial as follows:

---

§§ 9541-46. Specifically, instead of reciting the three claims that Petitioner had raised in the PCRA motion that his counsel, George M. Schroeck, Esquire, filed on his behalf (SCR No. 31), Respondents improperly directed this Court to the numerous claims that Petitioner had raised in a *pro se* PCRA motion (SCR No. 32), which was dismissed by the PCRA court because Schroeck had already filed a PCRA motion. (SCR No. 33). Significantly, Respondents improperly indicated to this Court that the Superior Court of Pennsylvania had addressed on the merits the numerous claims that Petitioner had raised in his *pro se* PCRA motion. This Court's independent review of the state court records confirms that the only claims that were before the Superior Court were the three claims that Schroeck had raised, and those are the only claims that the Superior Court addressed on the merits.

 Additionally, the state court record submitted by Respondents did not contain relevant documents; the Court of Common Pleas docket sheet they submitted was not current; and, they did not supplement the state court record with relevant decisions issued by the Court of Common Pleas and the Superior Court of Pennsylvania after this habeas proceeding commenced. Under the Federal Rules, it is the respondents' obligation to provide this Court with relevant parts of the state court record and Respondents in this case were specifically reminded by this Court that they must comply with Rule 5 of the Federal Rules Governing Section 2254 Cases. This Court also specifically directed that the "District Attorney shall furnish this court with the state court records, including all transcripts, all briefs filed by the Petitioner, and all written opinions of the state courts/agencies as well as certified copies of the docket sheets of all the state courts/agencies involved." (Docket # 8). An incomplete state court record not only delays the resolution of a petition, but also places the federal court in the difficult position of researching the state record in what should be the advocate's role. Additionally, without a complete state court record, it is nearly impossible for the federal habeas court to determine whether a petitioner has exhausted his state court remedies and/or procedurally defaulted on any of his issues. This Court on its own initiative has obtained the current docket sheet from the Court of Common Pleas (which is attached at Exhibit A) and the *Memorandum* issued by the Superior Court on February 12, 2008 (which is attached at Exhibit B).

2

At 2:25 p.m. on December 17, 2003, Kristen Boyd, the assistant principal at Diehl Elementary School in Erie, telephoned Appellant's wife to inform her that Appellant's son, Fahiym, was going to be suspended from school for one day for striking a teacher in the face with a snowball. During that conversation, Appellant became enraged, started shouting, took the telephone receiver from his wife, identified himself as Fahiym's father, and began "yelling and screaming obscenities" at Ms. Boyd. N.T. Trial, 10/13/04, at 34. Ms. Boyd calmly attempted to explain the incident and the school's disciplinary policy to Appellant, but he repeatedly interrupted her and continued to use profane language. As a result, Ms. Boyd informed Appellant that she would hang up if he refused to calm down and discuss the suspension in a rational manner; in response, Appellant stated, "Well, if you're going to suspend my son for throwing a snowball, I'll give him a gun, have him bring it to school and blow everyone away. I'll be right over." Id. at 36. Appellant then hung up on Ms. Boyd.

Ms. Boyd immediately contacted the school's principal, described her conversation with Appellant, and stated that she believed Appellant was on his way to the school with a firearm. The principal directed Ms. Boyd "to lock the school down, to call [the] school district police, and to call 911." Id. Ms. Boyd complied, and all students were called into the building, all entrances were locked, all exterior window shades were pulled down, students were kept away from exterior windows and doors, and police agencies were notified. The lock-down procedure was particularly difficult to conduct in this instance because the student body is dismissed at 2:30 p.m., and several children had ventured outside the building to be transported to their homes. Id. at 37. After the building was sealed, Appellant and his wife appeared at the main entrance to the school, which was being monitored with a video camera, and rang the buzzer located at the door. Ms. Boyd instructed her staff to ignore the buzzer and stand back from the door. Appellant and his wife stood in the doorway for approximately five to ten minutes and then left. Shortly thereafter, police officers arrived on the scene, Ms. Boyd gave a written statement detailing the incident, and students eventually were permitted to return to their homes.

Ms. Boyd testified that to her knowledge, this was the first time the school had been locked down. She also stated that while she has dealt with irate parents on several occasions, none of those confrontations resulted in threats of physical violence. She testified:

> I have never been … threatened in a verbal way that … caused harm to me. I've been told I'd lose my job or sworn at or yelled at many times. People come in, parents come in and they're upset and they don't always deal with it in the best way. But this time I feared for the children. I feared for myself, to be honest, and I feared for the teachers that were in our building that [Appellant] could come in an do harm to all of us.

Id. at 44. Appellant chose not to testify in his own defense and presented only one witness, Julie Davis, the school secretary, who testified that she spoke to Appellant's wife on the telephone shortly after Appellant and his wife left the premises on the day in question. Ms. Davis testified that she told Appellant's wife that the doors to the school could not be opened due

3

to "electrical problems."  Id. at 95.

(SCR No. 52, Commonwealth v. Cooper a/k/a, Muhammad, No. 1574 WDA 2005, slip op. at 1-4 (Pa.Super. Aug. 10, 2005)).

In his closing argument, Lagner argued to the jury that Ms. Boyd overreacted to the situation and suggested that she may have "embellished" the incident when she reported it to the police. Lagner further argued that the Commonwealth did not introduce evidence to sustain its burden of proof. (N.T. Trial at 100-13).

On October 14, 2004, the jury found Petitioner guilty of Terroristic Threats. In November 2004, Judge Connelly sentenced him to 18-60 months imprisonment. Judge Connelly also graded Petitioner's conviction as a felony of the third degree pursuant to 18 Pa.C.S. § 2706(d), which provides:

> **(d) Grading**. – An offense [of Terroristic Threats] constitutes a misdemeanor of the first degree unless the threat causes the occupants of the building, place of assembly or facility of public transportation to be diverted from their normal or customary operations, in which case the offense constitutes a felony of the third degree.

During Petitioner's trial, there had been a discussion as to whether this statute required that the jury make certain factual findings. Judge Connelly determined that the grading of Petitioner's crime was a question for the court based on the evidence, and Lagner and the prosecutor agreed. (N.T. Trial at 85-90).

After the trial, Lagner withdrew as defense counsel. Petitioner retained private counsel, Caleb L. Nichols, Esquire, to represent him and he filed a post-sentence motion in which he argued that there was insufficient evidence for the jury to have found guilt beyond a reasonable doubt. Petitioner also claimed that he should have received a lesser sentence. (SCR No. 27). Judge Connelly denied the motion on December 17, 2004. (SCR No. 29). Petitioner did not file an appeal to the Superior Court of Pennsylvania.

Next, Petitioner retained Schroeck to represent him. See *supra* note 2. On June 9, 2005, Petitioner, through Schroeck, filed a PCRA motion. (SCR No. 31). He raised three claims of ineffective assistance of trial counsel. First, Petitioner claimed that Lagner was ineffective for not requesting that the jury be instructed that it could not find him guilty if it determined that he

4

had made a spur-of-the moment threat to Boyd during a heated exchange. Second, Petitioner claimed that Lagner was ineffective in the manner in which he had argued for a mistrial after a bomb threat caused the courthouse to be evacuated on the second day of trial. He contended that Lagner should have, but did not, request a mistrial on the basis that jurors overheard television newspersons who were covering the evacuation report that Petitioner had been a suspect in a previous anthrax evacuation of the courthouse in March 2004. Third, Petitioner claimed that Lagner was ineffective for failing to request a supplemental jury instruction explaining what constitutes a "serious public inconvenience" under 18 Pa.C.S. § 2706(a)(3), after the jury had asked a question concerning the elements of Terroristic Threats.

On July 20, 2005, Judge Connelly issued an *Opinion and Notice of Intent to Dismiss PCRA Without Hearing Pursuant to Pa.R.Crim.P. 907(1)*. (SCR No. 36, Commonwealth v. Cooper a/k/a Muhammad, Criminal Division No. 303 of 2004, slip op. (C.P. Erie July 20, 2005)). After Petitioner filed a *Response* (SCR No. 38), Judge Connelly issued a final order dismissing the PCRA motion. (SCR No. 29).

On July 18, 2006, Judge Connelly appointed William J. Hathaway, Esquire, to represent Petitioner in his appeal to the Superior Court. (SCR No. 44). On July 25, 2006, Petitioner filed in the Court of Common Pleas a document stating that he waived court-appointed counsel. (SCR No. 48). Thereafter, Hathaway filed a motion for leave to withdraw as counsel. On August 3, 2006, Judge Connelly issued an order denying Hathaway's motion (SCR. No. 49), and took judicial notice of the determination that Petitioner was "mentally incompetent," which was made by the Honorable Maurice B. Cohill of the United States District Court for the Western District of Pennsylvania on July 12, 2006, in a separate federal criminal proceeding in which Petitioner was a defendant, U.S.A. v. Muhammad a/k/a Cooper, Criminal Docket No. 05-35 (W.D.Pa.).

On February 9, 2007, the Superior Court affirmed the denial of PCRA relief. (SCR No. 52, Commonwealth v. Cooper a/k/a Muhammad, No. 1574 WDA 2005, slip op. (Pa.Super. Feb. 9, 2007)). On February 22, 2007, Petitioner filed a second PCRA motion based on alleged "after discovered evidence," – the transcript of a news broadcast from a local television station (which he had acquired a year and a half earlier, on September 27, 2005). (See SCR No. 53 at 2). On

April 3, 2007, Petitioner withdrew the second PCRA motion. (SCR Nos. 54 & 55).

On July 2, 2007, Petitioner filed a third PCRA motion. (SCR No. 56). He raised two claims of ineffective assistance of counsel. First, he claimed that that Lagner was ineffective for failing to request that the jury be charged with determining his degree of guilt under 18 Pa.C.S. § 2706(d). (Id. at 3-5). Second, he claimed that Attorney Lagner was ineffective for failing to object to the fact that the police officer that had filed the criminal complaint against petitioner did not testify at trial. (Id. at 7-8).

On August 14, 2007, Judge Connelly dismissed the third PCRA motion as untimely under the PCRA statute of limitations, 42 Pa.C.S. § 9545(b)(1). (See Court of Common Pleas docket sheet, Ex. A at 2). Petitioner filed a *pro se* appeal. On February 9, 2008, the Superior Court affirmed. (Ex. B, Commonwealth v. Muhammad, No. 1574 WDA 2005, slip op. (Pa.Super. Feb. 9, 2008)). On March 13, 2008, Petitioner filed an allowance of appeal to the Pennsylvania Supreme Court, which was denied on August 26, 2008.

In the meantime, on February 26, 2007, Petitioner filed his petition for writ of habeas corpus with this Court (Docket # 5), in which he raises the following claims:

| | | |
|---|---|---|
| Claim 1 | | Judge Connelly abused his discretion and deprived him of a fair trial; |
| Claim 2 | | Lagner was ineffective for failing to object to Judge Connelly making the determination of his degree of guilt under 18 Pa.C.S. § 2706(d); |
| Claim 3 | | Lagner was ineffective for failing to request that the jury be required to make a finding under 18 Pa.C.S. § 2706(d) as to whether Petitioner was guilty of a felony of the third degree; |
| Claim 4 | | Lagner was ineffective for failing to impeach Boyd's testimony with telephone records; |
| Claim 5 | | Lagner was ineffective for not introducing into evidence the telephone records; |
| Claim 6 | | Lagner was ineffective for failing to investigate newsreporting from the courthouse investigation, which would have shown that jurors were tainted by the news coverage; and, |
| Claim 7 | | Lagner was ineffective for failing to present the testimony of witnesses who were willing to testify for the defense, but |

who were denied entrance into the courthouse.³

(*Petition*, Docket # 5, at 7-8).

### B. Discussion

#### 1. Exhaustion and Procedural Default

This proceeding is governed by the federal habeas statute applicable to state prisoners, 28 U.S.C. § 2254, as amended by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"). Under the federal habeas statute, a state prisoner is entitled to habeas corpus relief only if he demonstrates that his state custody violates the Constitution, laws, or treaties of the United States. 28 U.S.C. §2 254(a); Estelle v. McGuire, 502 U.S. 62, 67-68 (1991).

Importantly, a state prisoner must provide the state courts with the first opportunity to consider any claim that he has raised in his federal habeas petition. 28 U.S.C. § 2254(b)(1)(A). This "exhaustion" requirement is "grounded in principles of comity; in a federal system, the States should have the first opportunity to address and correct alleged violations of state prisoner's federal rights.'" Cristin v. Brennan, 281 F.3d 404, 410 (3d Cir. 2002); see also O'Sullivan v. Boerckel, 526 U.S. 838, 844 (1999). In a non-capital case in Pennsylvania, a petitioner must have fairly presented a claim to the Superior Court in order to satisfy the exhaustion requirement. Lambert, 387 F.3d at 233-34.

In this case, the only claim that Petitioner properly exhausted is Claim 6, which he raised in his first PCRA proceeding. It appears that Claim 2 and Claim 3 encompass allegations that Petitioner made in his third PCRA motion. Those claims are procedurally defaulted because the

---

³ Petitioner also raises two claims that are not cognizable in federal habeas. In Claim 8, he contends that the PCRA court violated his due process rights because it denied his request to proceed *pro se* in his PCRA appeal. In Claim 9, he contends that Attorney Hathaway was ineffective PCRA counsel. (Docket # 5 at 8-9) . "[T]he federal role in reviewing an application for habeas corpus is limited to evaluating what occurred in the state or federal proceedings that actually led to the petitioner's conviction; what occurred in the petitioner's collateral proceeding does not enter into the habeas calculation." Hassine v. Zimmerman, 160 F.3d 941, 954 (3d Cir. 1998) (internal citations omitted); Lambert v. Blackwell, 387 F.3d 210, 247 (3d Cir. 2004) ("[A]lleged errors in collateral proceedings are not a proper basis for habeas relief from the original conviction."); see also Pennsylvania v. Finley, 481 U.S. 551 (1987) (there is no constitutional right to an attorney in state post-conviction proceedings); Coleman v. Thompson, 501 U.S. 722, 752 (1991) (citing Wainwright v. Torna, 455 U.S. 586 (1982) (where there is no constitutional right to counsel there can be no deprivation of effective assistance)).

Superior Court determined that the third PCRA motion was untimely under the PCRA's statute of limitations. (Ex. B, Commonwealth v. Cooper a/k/a Muhammad, No. 1562 WDA 2007, slip op. at 6-10). A procedural default occurs when a petitioner's federal constitutional claim was barred from review in the state court because the petitioner failed to comply with a state procedural rule that is both "independent" of federal law and "adequate," (meaning firmly established and regularly followed), and the PCRA statute of limitations meets both criteria in this case. See, e.g., Coleman, 501 U.S. at 730-32; Doctor v. Walters, 96 F.3d 675, 683 (3d Cir. 1996). Petitioner also failed to properly raise Claim 1, Claim 4, Claim 5, and Claim 7 to the state courts. Because he cannot return to state court and file a timely PCRA motion and raise those claims now, those claims are procedurally defaulted as well. See, e.g., Whitney v. Horn, 280 F.3d 240, 251-52 (3d Cir. 2002) (the procedural default doctrine applies to bar federal habeas relief when a state court has declined or would decline to address a petitioner's federal constitutional claims because he failed to meet a state procedural requirement); Lines v. Larkin, 208 F.3d 153, 160-65 (3d Cir. 2000).

    A petitioner can overcome a procedural default, thereby allowing federal habeas review, if he can demonstrate "cause" for the default, *i.e.,* that some objective factor "external to the defense" impeded efforts to comply with the state's procedural rule, and "actual prejudice." Coleman, 501 U.S. at 750; see also Murray v. Carrier, 477 U.S. 478, 488, 494 (1986). Petitioner has the burden of demonstrating "cause and prejudice," see, e.g., Lines, 208 F.3d at 160, and he has not met his burden here. The United States Supreme Court has recognized that attorney error that rises to the level of a Sixth Amendment violation can constitute "cause," Coleman, 501 U.S. at 753-54, but Petitioner's PCRA counsels' failure to raise Claim 1 through 5 and Claim 7 in the first and only timely PCRA proceeding is not a sufficient basis upon which to demonstrate "cause," because Petitioner had no Sixth Amendment right to representation during his PCRA proceeding. Cristin, 281 F.3d at 420 (citing Finley, 481 U.S. at 555); Coleman, 510 U.S. at 752).

    A petitioner also can overcome a procedural default under the "fundamental miscarriage of justice" exception. This exception provides that a procedural default may be excused if the petitioner presents evidence of "actual innocence" that is "so strong that a court cannot have

8

confidence in the outcome of the trial unless the court is also satisfied that the trial was free of nonharmless constitutional error[.]" Schlup v. Delo, 513 U.S. 298, 316 (1995); see also Goldblum v. Klem, 510 F.3d 204, 225 (3d Cir. 2007); Albrecht v. Horn, 485 F.3d 103, 121-27 (3d Cir. 2007). There is no basis to apply the fundamental miscarriage of justice exception to this case.

### 2. Claim 6 Is Without Merit

Because the Superior Court adjudicated Claim 6 on the merits, this Court's review of that claim is governed by AEDPA's deferential standard of review, which is set forth at 28 U.S.C. § 2254(d). AEDPA "modified a federal habeas court's role in reviewing state prisoner applications in order to prevent federal habeas 'retrials' and to ensure that state-court convictions are given effect to the extent possible under law." Bell v. Cone, 535 U.S. 685, 693 (2002). It provides:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim –
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C.§ 2254(d)(1). See also Williams v. Taylor, 529 U.S. 362, 405-06 (2000); Lambert, 387 F.3d at 234.

The "clearly established Federal law" in which to analyze a petitioner's ineffective assistance claims is set forth in Strickland v. Washington, 466 U.S. 668 (1984). Under Strickland, petitioner first must show that "counsel's representation fell below an objective standard of reasonableness." Id. at 688; see also Williams, 529 U.S. at 390-91. "A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to

evaluate the conduct from counsel's perspective at the time." Thomas v. Varner, 428 F.3d 491, 499 (3d Cir. 2005) (quoting Strickland, 466 U.S. at 689). "However, [b]ecause of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within the wide range of professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy." Id. (quoting Strickland, 466 U.S. at 689). "[I]t is only the rare claim of ineffective assistance of counsel that should succeed under the properly deferential standard to be applied in scrutinizing counsel's performance." United States v. Kauffman, 109 F.3d 186, 190 (3d Cir. 1997). Second, petitioner must show that he was prejudiced by the deficient performance. "This requires showing that counsel's errors were so serious as to deprive [the petitioner] of a fair trial, a trial whose result is reliable." Strickland, 466 U.S. at 687. In other words, petitioner "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." Id. at 694.

The Superior Court applied the correct legal standard to the ineffective assistance claims that Petitioner raised in the first PCRA motion. (SCR No. 52, Commonwealth v. Cooper a/k/a Muhammad, No. 1574 WDA 2005, slip op. at 5); see also Commonwealth v. Kimball, 724 A.2d 326 (Pa.1999) (legal standard for evaluating ineffective assistance claims in a PCRA proceeding is the same as the federal Strickland standard). Therefore, the Superior Court's adjudication of Claim 6 was not "contrary to" Strickland. See Williams, 529 U.S. at 406; Werts v. Vaughn, 228 F.3d 178, 202-04 (3d Cir. 2000) ("[A] state court decision that applied the Pennsylvania [ineffective assistance of counsel] test did not apply a rule of law that contradicted Strickland and thus was not 'contrary to' established Supreme Court precedent.").

In reviewing whether the Superior Court's adjudication of Claim 6 withstands review under the "unreasonable application of" clause of § 2254(d)(1), the rule is that federal courts "are not authorized to grant habeas corpus relief simply because we disagree with the state court's decision or because we would have reached a different result if left to our own devices." Werts, 228 F.3d at 197. It is not enough for Petitioner to show that the Superior Court's decision was an

10

"incorrect or erroneous" application of Strickland. Wiggins v. Smith, 539 U.S. 510, 521 (2003) (citations omitted). Instead, he must show that its application of Strickland was "objectively unreasonable" meaning, the "outcome...cannot reasonably be justified under existing Supreme Court precedent." Hackett v. Price, 381 F.3d 281, 287 (3d Cir. 2004) (citations omitted).

In denying Claim 6, the Superior Court held:

> The following facts are relevant to our disposition of this claim. On the morning of Thursday, October 14, 2004, the second day of trial, someone telephoned the courthouse and indicated that there was a bomb in the building. As a result, the building was evacuated in its entirety, and the judge, jury, and parties herein were instructed to exit the structure. When the proceedings reconvened at 1:11 p.m., Appellant's trial counsel, Stephen Lagner, moved for a mistrial during a conference in the judge's chambers, stating as follows:
>
> I believe it's necessary, in light of the circumstances that occurred this morning and some related factors with regard to the case, that I had [better] ask for a motion for mistrial. And the … basis for the mistrial is because … the nature of the offense indicates that [Appellant] had with a teacher from the school, that it ended up causing a disruption at the school and they ended up locking the school down.
>
> In this incident today, obviously the jurors know or have known there is a bomb threat or something of that nature and that the courthouse was inconvenienced, shut down, closed down. My concern is … that even though perhaps they could say, well, we can set that aside and won't relate that to this, I think there would be an inclination for them to somehow give that consideration as they are deliberating.
>
> N.T. Trial, 10/4/04, at 80. The trial court denied the motion, observing that there was "very little similarity" between the incident in question and the courthouse bomb threat. Id. at 82. However, the court did offer to give a curative instruction directing jurors not to consider the bomb threat in their deliberations. Mr. Lagner declined the court's offer, and no special instructions were given.
>
> Presently, Appellant argues that Mr. Lagner argued the motion improperly and should have requested a mistrial on the basis that the jury in this case might have been exposed to television crews outside the courthouse who allegedly reported that Appellant was on trial for terroristic threats and that he also was a suspect or person of interest in an ongoing investigation involving a "previous anthrax scare" at the same courthouse.
>
>     \*        \*        \*
>
> The PCRA court found this issue to be meritless because Appellant "has not proffered testimony from any named source to the effect that an alleged news broadcast was conducted at the courthouse, what the context of that broadcast was, or that any juror heard the broadcast or was even in

11

> that area at the time." Trial Court Opinion, 7/20/05, at 1. We concur with the court's assessment. Appellant failed to identify a single television station that actually broadcast a story about his alleged involvement in an anthrax scare at the courthouse, and he did not allege that any jurors ever heard the report. Furthermore, Appellant conceded that Mr. Lagner might not have known about the alleged report. Accordingly, we agree with the trial court that Appellant failed to plead sufficient facts to warrant an evidentiary hearing on this issue. See Commonwealth v. Pitts, 884 A.2d 251 (Pa.Super. 2005) (affirming denial of post-conviction relief without an evidentiary hearing where appellant's underlying claim of non-specific juror bias was premised on sheer speculation).

(SCR No. 52, Commonwealth v. Cooper a/k/a Muhammad, No. 1574 WDA 2005, slip op. at 7-10).

The Superior Court's adjudication of Claim 6 satisfies AEDPA's standard of review. Petitioner claims in the instant federal habeas petition that Channel 24 and Channel 35 reported during the courthouse evacuation that he had been a suspect in an earlier anthrax scare and that jurors overheard that reporting. However, he did not present to the state court any evidence to support these allegations. As a result, he cannot show that Lagner was ineffective for failing to contend, in support of the motion for mistrial, that the jurors were "tainted" by the news coverage of the courthouse evacuation, or that he was prejudiced. Because the Superior Court's rejection of this claim was not an "unreasonable application" of Strickland, and did not result "in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding," 28 U.S.C. § 2254(d)(1)-(2), Petitioner is not entitled to habeas relief.

### C. Certificate of Appealability

Section 102 of the Antiterrorism and Effective Death Penalty Act (28 U.S.C. § 2253 (as amended)) codified standards governing the issuance of a certificate of appealability for appellate review of a district court's disposition of a habeas petition. Amended Section 2253 provides that "[a] certificate of appealability may issue ... only if the applicant has made a substantial showing of the denial of a constitutional right." In Slack v. McDaniel, 529 U.S. 473, 474 (2000), the Supreme Court also stated that "[w]hen the district court denies a habeas petition on procedural grounds without reaching the prisoner's underlying constitutional claim, a [certificate of

appealability] should issue when the prisoner shows, at least, that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." Applying those standards here, jurists of reason would not find it debatable whether Claim 6 is without merit and whether Petitioner's remaining claims are procedurally defaulted. Accordingly, a certificate of appealability should be denied.

### III. CONCLUSION

For the foregoing reasons, it is respectfully recommended that the Petition for Writ of Habeas Corpus be denied, and that a certificate of appealability be denied.

In accordance with 28 U.S.C. § 636(b)(1)(B) and (C), and Rule 72.1.4(B), the parties are allowed 10 days from the date of service to file written objections to this Report and Recommendation. Any party opposing the objections shall have 7 days from the date of service of objections to respond thereto. Failure to file timely objections may constitute a waiver of some appellate rights. See Nara v. Frank, 488 F.3d 187 (3d Cir. 2007).

/s/ Susan Paradise Baxter
SUSAN PARADISE BAXTER
Chief United States Magistrate Judge

Dated: January 13, 2008

cc: The Honorable Sean J. McLaughlin
United States District Judge